IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JAMES RANDY WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 1:16-cv-00102** |
| | ) | |
| **GRAPHIC PACKAGING** | ) | **JUDGE CAMPBELL** |
| **INTERNATIONAL, INC.,** | ) | **MAGISTRATE JUDGE** |
| | ) | **FRENSLEY** |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 24).

Plaintiff filed a response in opposition (Doc. No. 29), and Defendant has replied. (Doc. No. 35).

For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

## I.     FACTUAL BACKGROUND

Plaintiff, James Randy Williams, alleges unlawful employment practices against his former

employer, Defendant Graphic Packaging International, Inc. Plaintiff asserts claims under the

Americans with Disabilities Act ("ADA"), Tennessee Disability Act ("TDA"), Genetic

Information Non-Discrimination Act ("GINA"), Age Discrimination in Employment Act

("ADEA"), Tennessee Human Rights Act ("THRA"), Family Medical Leave Act ("FMLA"), and

the Employee Retirement Income Security Act ("ERISA").

Plaintiff was employed by Defendant as a department manager over cutting and gluing

from September 2011 until December 2015. (Doc. No. 31 at 1). Plaintiff was 55 years old when

Eddie Lee ("Lee") hired Plaintiff. (*Id.* at 2). During his tenure with the Defendant, Plaintiff

consistently received positive performance evaluations for meeting and exceeding production

goals. (*Id.*). Plaintiff supervised four managers who reported directly to him: Tasha Pack ("Pack"),

Sandy Williams ("Williams"), Jackie Miles ("Miles"), and Tony Sewell ("Sewell"). (*Id.* at 3). Plaintiff was "second in command" over operations at the facility, and the managers reported directly to him. (*Id.*). Plaintiff was diagnosed with prostate cancer for the second time in September of 2015, and requested a leave of absence under Defendant's medical leave policy to undergo treatment. (*Id.* at 4). Defendant granted Plaintiff's leave request and Plaintiff took medical leave from September 2015 until November 23, 2015. (*Id.* at 4). Pack assumed Plaintiff's duties while he was on leave. (*Id.*).

While working with Pack during Plaintiff's FMLA leave, Lee noticed that Pack was not communicating with him regularly and met with Pack in mid –November to address her lack of communication. (*Id.* at 5). Pack revealed she was afraid to communicate with Lee because Plaintiff warned her that Lee was not to be trusted and cautioned her to avoid Lee as much as possible. (*Id.*). On November 30, 2015, Lee and Steve Flatt ("Flatt"), Defendant's HR Manager, spoke with Plaintiff about the issues Pack raised, and Plaintiff denied them. (*Id.* at 7). On December 1, 2015, Flatt interviewed Pack and she alleged Plaintiff yelled at her in front of her subordinates on multiple occasions, threatened to fire her, and stated that he "owned" her. (*Id.* at 12-14). Pack also told Flatt that Plaintiff disclosed to her that Miles received an unfavorable performance evaluation and did not get a raise. (*Id.* at 15).

Flatt conducted an investigation and requested all the managers under Plaintiff to email him about grievances they had against Plaintiff. (*Id.* at 17). Miles and Sewell each emailed Flatt instances when Plaintiff told them they had "targets on their back" and he "owned" them, threatened to fire them, and led them around the production floor while making statements about their inability to manage in front of employees. (*Id.* at 18-19). Flatt learned from Connie Hunt ("Hunt"), a supervisor who did not report to Plaintiff, that she had helped Plaintiff cheat on a safety

training test. (*Id.* at 21). Flatt also learned Plaintiff exchanged text messages with an employee and Pack about a rumor regarding Lee molesting his daughter. (*Id.* at 15, 22). On December 2, 2015, Defendant suspended Plaintiff pending an investigation into the Plaintiff's violations of the Company's Core Values. (Doc. No. 1 at 4).

On December 7, 2015, Flatt conducted his first interview with Plaintiff by telephone; Plaintiff described his relationship with his subordinates as good. (*Id.* at 22). Plaintiff admitted to receiving "assistance" on his training test and telling only Pack about the rumor regarding Lee, but denied threatening employees with termination, yelling at them, or telling them that he "owned" them. (*Id.* at 23). Plaintiff further denied that he had spoken with another employee about the rumors concerning Lee. (*Id.*). On December 8, Flatt interviewed Plaintiff again by telephone to allow Plaintiff to clarify his response regarding speaking to another employee about the rumor concerning Lee because Flatt had reviewed the text messages involving Plaintiff about that subject. (*Id* at 24). When Flatt revealed he had the text messages that Plaintiff exchanged with the employee, Plaintiff claimed he forgot about the messages during the previous interview. (*Id.* at 24-25).

After speaking with Plaintiff, Flatt gathered written statements, prepared a final report of his investigation and recommended Plaintiff's termination. (*Id.* at 25). Flatt submitted his report and recommendation to Lee, the regional director of operations, the regional director of human resources, the second regional director of human resources, the vice president of human resources, and in-house counsel, who were tasked with determining Plaintiff's termination. (*Id.* at 27). During a December 14, 2015 group call, to discuss Flatt's recommendation, all participants who viewed Flatt's recommendation agreed to terminate Plaintiff's employment for violating Graphic's Core

Values. (*Id.* at 28-29). Defendant terminated Plaintiff's employment on December 14, 2015. (*Id.* at 29).

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and filed his Complaint on November 21, 2016, within ninety (90) days of his receipt of the Notice of Rights to Sue Letter alleging that Defendant discriminated against him. (Doc. No. 1). In response, Defendant argues that Plaintiff was terminated for violating company policy by using fear, intimidation, and manipulation to manage his subordinates. (Doc. No. 24 at 1). Defendant denies discriminating, interfering, or retaliating against Plaintiff and seeks summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## III.    ANALYSIS

### A.    PLAINTIFF'S ADA AND TDA DISCIMINATION CLAIMS

Title I of the ADA and the Tennessee Disability Act prohibits covered employers from discriminating against a "qualified individual on the basis of disability with regard to hiring, advancement, training, termination, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a), Tenn. Code Ann. § 8-50-103(b). Claims are analyzed using the familiar burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] The analysis applies when, as here, a plaintiff relies on circumstantial evidence to prove that an employer discriminated or retaliated against the employee. If the plaintiff establishes a *prima facie* showing, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse action. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). If the defendant articulates such a reason, the burden then "shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Id.*

Defendant argues it is entitled to summary judgment on Plaintiff's ADA and TDA discrimination claims. To establish a *prima facie* case for ADA and TDA discrimination, Plaintiff

---

[1] "A claim brought under the THA [Tennessee Handicap Act, now known as the TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities Act." *Cardenas–Meade v. Pfizer, Inc.*, 510 Fed. Appx. 367, 369 n. 2 (6th Cir.2013) (quoting *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004)).

must show: (1) he is disabled, (2) he is otherwise qualified for the position, with or without reasonable accommodation, (3) he suffered an adverse employment action, (4) Defendant knew or had reason to know of Plaintiff's disability, and (5) the position remained open while Defendant sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). The parties do not appear to dispute whether evidence supports establishment of a *prima facie* case of ADA or TDA discrimination or that Defendant provides a legitimate, non-discriminatory reason for terminating Plaintiff.[2] Instead, Defendant argues Plaintiff cannot put forth evidence that Defendant's decision was pretextual. (Doc. No. 24 at 13). Thus, the burden shifts to the Plaintiff to prove Defendant's legitimate, non-discriminatory reason for adverse action is pretextual. *Bryson*, 498 F.3d at 570 (6th Cir. 2007).

A plaintiff may show pretext in one of three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Barlia v. MWI Veterinary Supply, Inc.*, 2018 WL 327448 at *6 (6th Cir. 2018) (quoting *Ferrari v. Ford Motor Company*, 826 F.3d 885, 895 (6th Cir. 2016)), *see also Quillen v. Touchstone Medical Imaging LLC*, 15 F. Supp. 3d 774, 781-82 (M.D. Tenn. Apr. 18, 2014). The Sixth Circuit explained,

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.,* that they are factually false. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. . . The second showing. . . the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. . . In such cases, the plaintiff attempts to indict

---

[2] Defendant alleges they terminated Plaintiff because Plaintiff violated many of the Company's Core Values. (Doc. 24 at 16). "This Court has repeatedly held that violations of company policies, poor managerial skills, or leadership failures are legitimate, non-discriminatory reasons for disciplining or discharging an employee." *See Idemudia v. J.P. Morgan Chase*, 434 Fed.Appx. 495, 502 (6th Cir. 2011).

the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or a coverup.

*Hedrick v. Western Reserve Care System*, 355 F.3d 444, 461 (6th Cir. 2004).

Here, Plaintiff argues he can show pretext for all three situations. Therefore, the Court will analyze each of Plaintiff's arguments in turn.

### 1. Defendant's Proffered Reason Had No Basis in Fact.

Plaintiff argues Defendant's reasons for terminating him are pretextual because the investigation conducted by Flatt had no basis in fact. (Doc. No. 29 at 18). Specifically, Plaintiff argues Defendant's investigation and resulting report was filled with inconsistencies and falsehoods. (*Id.* at 18). Plaintiff alleges Flatt mischaracterized Pack's official complaint and the emails from other managers by including language that the managers never used in their email. (*Id.* at 19). Plaintiff asserts Defendant relied on false information from Pack and the other managers, because he never demeaned, berated or forced them to stay at work just to show that he could make them stay. (Doc. No. 30-2, William Affidavit).

In response, Defendant relies on the "honest belief" rule to dispute Plaintiff's assertion that he never violated the Company's Core Values. (Doc. No. 24 at 14-15). The Sixth Circuit applies the honest belief rule to employment discrimination claims and states, "as long as the employer honestly believed the reason it gave for its employment action, an employee is not able to establish pretext even if the employer's reason is ultimately found to be mistaken." *Ferrari v. Ford Motor Company,* 826, F.3d 885, 895-96 (6th Cir. 2016); *see also Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (explaining that "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary

judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless."). Defendant based Plaintiff's termination on complaints from other managers and Flatt's investigation and report. The report presumed Plaintiff violated the Company's Core Values, and Plaintiff cannot show that Defendant unreasonably relied on the report. (Doc. No. 24 at 15-16).

The Court finds that Defendant's proffered reason had a basis in fact. Furthermore, Plaintiff admitted to some of the conduct upon which the termination recommendation was based. (Doc. No. 31 at 23-25). Defendant has implemented an Open Door and Problem Resolution Policy that allows employees to bypass their immediate supervisors when raising concerns, and states that open communication is essential to a successful work environment. (*Id.* at 30). Defendant had an honest belief in terminating Plaintiff, and reasonably relied on employees' signed emails and Flatt's recommendation and report regarding how Plaintiff treated the managers, which violated the Open Door and Problem Resolution Policy.[3] *See Marshall v. The Rawlings Co. Inc.*, 854 F.3d 368, 380 (6th Cir. 2017); *Jones v. Potter*, 488 F.3d 397 (6th Cir. 2007). Even if Plaintiff asserts that the information in the emails provided by the other managers was incorrect and the Court ignores Plaintiff's own admissions, under the "honest belief" rule Plaintiff does not establish a basis for pretext.

**2. Defendant's Proffered Reason Did Not Motivate Defendant's Actions.**

Plaintiff argues circumstantial evidence shows his disability motivated Defendant's decision to terminate him. Throughout his four years of employment Plaintiff had no issues and received positive performance reviews, but when he began undergoing treatment for his cancer he was terminated in less than a month. (Doc No. 29 at 22). Plaintiff asserts Lee and Flatt set their

---

[3] *See* Doc. No. 31 ¶¶ 33, 37, 40-42, 50-56, 58-59, 60.

plan in motion to terminate Plaintiff on November 30, 2015, after Plaintiff returned from medical leave. (*Id.* at 18). Lee and Flatt created a "Memorandum of Record" for his file despite receiving no complaints or having knowledge of mistreatment, and used it as the basis for Plaintiff's termination. (*Id.*). Plaintiff argues Defendant is merely using the policy violations as a cover-up for disability discrimination.

Defendant asserts Plaintiff's disability did not play a role in his termination. (Doc. No. 25 at 20). While Plaintiff asserts he was suddenly in trouble when he returned from his medical leave, Plaintiff's misconduct did not come to light until Pack, as the interim manager, had the opportunity to interact regularly with Lee. (*Id.*). It was not until mid-November that Pack felt comfortable telling Lee the extent Plaintiff had manipulated and mistreated her. (*Id.*). Pack's complaint on December 1, 2015, resulted in the investigation into Plaintiff's misconduct, not Plaintiff's disability.

The Court finds Plaintiff does not proffer any circumstances which would tend to prove an illegal motivation was more likely the reason for Plaintiff's termination than the reason offered by Defendant. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759-60 (6th Cir. 2000). Plaintiff's argument that the decision to terminate him had already been made a week after Plaintiff's return is not pretext for an illegal motive. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 401-02 (6th Cir. 2009) (finding that even if plaintiff can show the decision to terminate her was made in June, it does not follow that defendant's reason, her unsatisfactory performance, was pretextual). Defendant offered evidence that Plaintiff violated the Company's Core Values based on the emails received from other managers and that evidence served as the motivation to terminate Plaintiff's employment. Other than challenges to the timing of the events, Plaintiff offers the Court no evidence that discriminatory motives can be attributed to Flatt or Lee (or the ultimate decision

makers). Because Plaintiff has not produced evidence for which a reasonable jury could doubt he was fired for violating company policies, the Court finds Plaintiff has not shown pretext.

###   3. Defendant's Proffered Reasons Was Insufficient to Motivate Plaintiff's Termination.

Finally, Plaintiff argues violating Company Core Values was insufficient to motivate his discharge because similarly situated employees kept their jobs. Plaintiff argues that he was terminated in part for perpetuating a rumor about Lee, but the employee who initiated the rumor was not terminated and Pack, who spread the rumor, was not punished, but promoted. (Doc. No. 29 at 21). Plaintiff further asserts that he was terminated for receiving assistance on a safety test, but Hunt, the supervisor who provided him the answers, was not reprimanded. (*Id.*).

Defendant responds that Plaintiff was not similarly situated with other employees or supervisors who were not terminated for their behaviors. (Doc. No. 25 at 17). Defendant states that Pack and Hunt were managers and therefore subordinates of the Plaintiff. (*Id.* at 17). Furthermore, neither was accused of violating the Company's Core Values by mistreating employees. (*Id.*). On the other hand, Plaintiff was "second in command" and had vastly different duties than Hunt and Pack. (*Id.*).

The Court finds Pack and Hunt were not similarly situated to Plaintiff given the totality of the basis for the termination and their being Plaintiff's subordinates. *See Williams v. AT&T Mobility Serv. LLC*, 847 F.3d 384, 397-98 (6th Cir. 2017) (holding "similarly situated" means having the same supervisor, governed by the same standards of conduct, and committed the same violations as plaintiff, without any differentiating or mitigating circumstance that would merit different treatment). Therefore summary judgment for Plaintiff's ADA and TDA discrimination claim is appropriate and Defendant's motion is **GRANTED**.

## B. PLAINTIFF'S CLAIM FOR FAILURE TO ACCOMMODATE UNDER THE ADA

To establish a *prima facie* failure-to-accommodate claim, a plaintiff must show: "(1) he is disabled under the ADA; (2) he is otherwise qualified for the position, with or without a reasonable accommodation; (3) his employer knew or had reason to know of his disability; (4) he requested a reasonable accommodation; and (5) the employer failed to provide the reasonable accommodation." *Cotuna v. Wal-Mart Stores, Inc.*, 2017 WL 5171247, at *2 (6th Cir. 2017). The employee bears the burden of requesting a reasonable accommodation. *Aldini v. Kroger Co. of Michigan*, 628 Fed. Appx. 347, 350 (6th Cir. 2015). As such, if the employee does not propose an accommodation, his claim generally must fail. *Id.* at 351.

Defendant argues Plaintiff failed to request an accommodation, and therefore Defendant was under no obligation to accommodate Plaintiff. (Doc. No. 24 at 24-25). Plaintiff argues he discussed with Lee, prior to taking leave to undergo cancer treatment, about receiving some assistance and a ground level office upon his return. (Doc. No. 29 at 28). Plaintiff further argues he was suspended within a week of returning from leave, which precluded the opportunity to test his physical limitations and pursue accommodations. (*Id*).

The Court finds no genuine dispute of material fact as to whether Plaintiff requested a reasonable accommodation. Plaintiff discussed with Lee, prior to his leave, about "probably" receiving assistance and a ground level office upon his return, but once Plaintiff returned to work he never had the opportunity to test his physical limitations to pursue the accommodation because Defendant terminated him three weeks later. (Doc. No. 31 ¶¶ 95-96).[4] While there is no bright line to establish when an employee's requests is clear to constitute a request for an accommodation, at

---

[4] *See also* Doc. 30-1, Williams Depo. p. 203, 206-207.

minimum a plaintiff must make it clear that the request is being made to conform with existing medical restrictions. *See Diester v. Auto Club Ins. Ass'n*, 647 Fed. Appx. 652, 657-58 (6th Cir. 2016) (holding plaintiff's blanket requests for defendant to review his medical records for a meeting to discuss employment conditions, or to be placed in a new position all are insufficient to amount to an accommodation request under the ADA); s*ee also Hubbs v. Textron, Inc.,* 249 Fed. Appx. 442, 449 (6th Cir.2000) (finding that "an employer cannot be said to know or have reason to know of an employee's disability where that employee returns to work without restriction or request for accommodation. The natural assumption in such a case is that the employee is fully fit for work"), *Stanciel v. Donahoe*, 570 Fed. Appx. 578, 583 (6th Cir. 2014) (citing *Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008) (holding an employee must prove the request for an accommodation is direct and specific so employer is put on notice of the need for the accommodation)). Furthermore, even if Plaintiff did request a clear accommodation at the meeting with Lee, Defendant never affirmatively denied Plaintiff's request for accommodation. (Doc. No. 31 ¶ 96). Accordingly, Defendant's motion for summary judgment on Plaintiff's ADA failure to accommodate claim is **GRANTED**.

## C. PLAINTIFF'S FMLA CLAIMS

The FMLA allows covered employees to take up to twelve weeks of leave per year for various purposes specified in the statute, including for the employee's own "serious health condition that makes the employee unable to perform the functions of the position. . ." 29 U.S.C. § 2612(a)(1)(D). At the expiration of the employee's leave period, he must be reinstated to his position or to a position equivalent in pay, benefits, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1).

The Sixth Circuit recognizes two theories of liability under the FMLA: (1) interference claims, in which employers interfere with or deny an employee's exercise of his FMLA rights; and (2) retaliation or discrimination claims, in which employers take adverse employment actions against employees for exercising their FMLA right to take leave. *Gates v. U.S. Postal Service*, 502 Fed. Appx. 485, 488 (6th Cir. 2012); *Easter v. Asurion Ins. Services, Inc.*, 96 F.Supp.3d 789, 795 (M.D. Tenn. Mar. 6, 2015). Both claims are analyzed using the burden-shifting analysis discussed above. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### 1.      Retaliation

To state a claim for FMLA retaliation, an employee must show: "1) he was carrying out an activity protected by the FMLA, 2) his employer knew he was exercising his rights under the FMLA, 3) the employer took adverse action against the employee, and 4) a causal link between the protected activity and adverse action. *Alexander v. Kellogg USA, Inc.*, 674 Fed. Appx. 496, 501 (6th Cir. 2017); *Moates v. Hamilton Cty.*, 976 F.Supp.2d 984, 994-95 (E.D. Tenn. Sept. 4, 2013). The FMLA prohibits an employer from discriminating against an employee who has taken FMLA leave, and cannot use the taking of FMLA leave as a negative factor in employment actions. *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 376-77 (6th Cir. 2017).

Defendant argues Plaintiff cannot establish a *prima facie* case for FMLA retaliation, because Plaintiff has no evidence of any adverse action taken against him for taking leave under the FMLA. (Doc. No. 25 at 22). Defendant asserts Plaintiff took leave in September 2015 and returned in November 2015 to the same shift in the same position at the same rate of pay. (*Id*. at 23). Furthermore, Plaintiff does not believe he was treated differently for taking FLMLA, and therefore his claims fail as a matter of law. (*Id.*).

However, the Court finds Plaintiff did suffer adverse employment action because Defendant terminated him soon after he returned from FMLA leave. *See White v. Burlington Northern & Sana Fe R. Co.*, 364 F.3d 789, 796-97 (6th Cir. 2004) (defining adverse employment action as termination of employment or any "materially adverse change in terms and conditions of plaintiff's employment). Furthermore, Plaintiff establishes the low burden of proof at the *prima facie* stage for showing a causal connection between the protected activity and adverse employment action, because of the proximity in time between Plaintiff returning from FMLA leave and his termination. *See Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that proximity in time between the protected activity and the adverse employment action may constitute evidence of causal connection). Because Plaintiff satisfies her *prima facie* showing of FMLA retaliation[5] and Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden then shifts back to the Plaintiff to show Defendant's reason for termination is pretextual.

Plaintiff asserts the same pretextual arguments from his ADA and TDA claims discussed above. Plaintiff also asserts Defendant's legitimate, nondiscriminatory reason for his termination is pretextual because prior to him exercising FMLA he had no disciplinary issues and received positive performance reviews. (Doc. No. 30 at 24). Plaintiff points to his suspension within a week after returning from FMLA leave and his termination two weeks later. (*Id*. at 24). Plaintiff argues Lee observed Plaintiff missing a lot of work before Plaintiff took FMLA leave and Defendant drastically heightened its scrutiny of Plaintiff after he took FMLA leave to justify termination. (*Id.*).

---

[5] Plaintiff satisfies the other *prima facie* elements because Plaintiff took FMLA leave from September 2015 to November 2015 and Defendant knew Plaintiff was exercising FMLA leave.

Plaintiff's claims fundamentally rest on the timing of Defendant's decision to terminate his employment. The Sixth Circuit has held, "[a]lthough temporal proximity alone is insufficient to satisfy [the] burden at this stage of the inquiry, 'suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence.'" *Bell v. Prefix, Inc.*, 321 Fed. Appx. 423, 431 (6th Cir. 2009) (quoting *DeBoer v. Musashi Auto Parts, Inc.,* 124 Fed. Appx. 387, 393-94 (6th Cir.2005)). Here, temporal proximity is not enough to establish retaliation; Plaintiff's other arguments, referenced in Section A, are no more persuasive.[6] The Court does not have a sufficient basis to conclude that Defendant's termination decision (set forth in detail above) was pretextual for retaliating against Plaintiff for exercising his FMLA rights, especially after Plaintiff utilized FMLA rights for cancer treatment with Defendant's approval. The Court therefore dismisses Plaintiff's FMLA retaliation claims and **GRANTS** Defendants motion for summary judgment.

## 2. Interference

While Plaintiff's Complaint asserts claims under FMLA interference (Doc. No. 1), Plaintiff implicitly abandons this claim by failing to defend or even address this claim in his response brief. *See Carrigan v. Arthur J. Gallagher Risk Management Services, Inc.*, 870 F. Supp. 2d 542, 550 (M.D. Tenn. 2012) (holding that plaintiff abandoned certain claims asserted in his complaint by failing to defend them in his response to defendant's motion for summary judgment). Accordingly, the Court **GRANTS** summary judgment to Defendant on Plaintiff's FMLA interference claim.

## D. PLAINTIFF'S ADEA AND THRA CLAIMS

The ADEA and the age-discrimination provisions of the THRA makes it unlawful for, "an employer to discriminate against an employee with respect to that employee's compensation on

---

[6] The Court relies on the same analysis in Section A, but also conducts a separate analysis for the additional pretextual facts alleged for FMLA retaliation.

account of age." *Marshall v. SSC Nashville Operating Co., LLC*, 686 Fed. Appx. 348, 353 (6th Cir. 2017); *see also* 29 U.S.C. § 623(a)(1); Tenn. Code Ann. § 4-21-401(a)(1). Both the ADEA and the THRA apply the same burden shifting analysis discussed above. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Marshall*, 686 Fed. Appx. at 353, *Wilson v. Rubin*, 104 S.W.3d 39, 50-51 (Tenn. Ct. App. 2002). To establish a *prima facie* case for age discrimination, a plaintiff must show by a preponderance of the evidence, "1) he is a member of the protected class, that is, he is at least forty years of age; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger worker." *Marshall*, 686, Fed. Appx. at 353 (citing *Tuttle v. Metro Gov't of Nashville*, 474 F. 3d 307, 316 (6th Cir. 2007)).[7] The parties do not dispute the express elements of a *prima facie* case for ADEA and THRA discrimination set forth above, and Defendant provides a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant, again argues, Plaintiff cannot put forth evidence that Defendant's decision for terminating Plaintiff was pretextual.

As discussed in Section A, Plaintiff reiterates his pretextual analysis and states it is equally applicable for ADEA and THRA discrimination. (Doc. No. 30 at 23). Plaintiff further argues that not only did Defendant replaced him with a younger employee, Pack (age 36), but when Lee questioned him about his cancer and treatments, Lee also asked about Plaintiff's age during those conversations. (*Id.*). Plaintiff argues there is clear evidence of pretext, and Defendant's proffered reason is "unworthy of credence." (*Id.*) (citing *Jones v. Nissan North America, Inc.*, 438 Fed. Appx. 388, 403 (6th Cir. 2011)).

---

[7] "Because of the commonality of purpose between the Tennessee Human Rights Act and the federal statutes, we may look to federal law for guidance in enforcing our own anti-discrimination laws." *Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 693 (Tenn. Ct. App. 2003).

Defendant asserts Lee's stray remark regarding Plaintiff's age is unrelated to Defendant's decision to terminate Plaintiff and that conversation occurred at least six months before Plaintiff's termination. (Doc. No. 25 at 19). Defendant also argues Lee hired Plaintiff when Plaintiff was 55 years old, and it is unlikely Lee would discriminate against Plaintiff based on age only four years later. (*Id.*). Furthermore, Lee, was who 55 at the time of Plaintiff's termination, is not substantially younger than Plaintiff and less likely to harbor any age-based discrimination towards Plaintiff. (*Id.* at 19-20). Defendant argues Plaintiff has no other evidence to show age factored into Defendant's decision to terminate his employment. (*Id.* at 20).

The Court concludes that Plaintiff's ADEA and THRA claims fail because Plaintiff has not shown Defendant's reason for termination was pretextual.[8] The undisputed facts show Lee mentioned Plaintiff's age during ***one*** conversation about Plaintiff's cancer, which is not enough to support a finding of age discrimination in the decision to terminate Plaintiff's employment months later. (Doc. No. 36 at ¶ 29); *Jackson v. Trinity Health-Michigan*, 656 Fed. Appx. 208, 215 (6th Cir. 2016) (citing *Sanders v. Gray Television Group, Inc.*, 478 Fed. Appx. 256, 266 (6th Cir. 2012) (holding "[t]o the extent that these comments were isolated and ambiguous, this court has held that these types of remarks are too abstract ... to support a finding of age discrimination")). Furthermore, the undisputed facts show that while Lee made one comment about Plaintiff's age to Plaintiff, Flatt—not Lee—conducted the investigation and eventually recommended termination. (Doc. No. 36 at ¶ 8); *see also Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (finding that adverse employment decisions regarding the plaintiff were made by the corporate ombudsman and Prevention of Critical Incidents Team, whom plaintiff did not allege made discriminatory

---

[8] The Court relies on the same analysis in Section A, but also conducts a separate analysis for the additional pretextual facts alleged for age discrimination.

comments). Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's ADEA and THRA age discrimination claims.

### E.    PLAINTIFF'S GINA CLAIMS

An employer or labor organization is prohibited from discrimination on the basis of "genetic information." 42 U.S.C. §§ 2000ff–2. GINA defines "genetic information" as information about a "genetic test" or "the manifestation of a disease or disorder in family members." 42 U.S.C. § 2000ff(4)(A). A "genetic test" is further defined as "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A). Pursuant to GINA, "[i]t shall be an unlawful employment practice for an employment agency to request, require, or purchase genetic information with respect to an individual or a family member of the individual" unless an exception applies, such as an individual voluntarily providing the information or an employment agency inadvertently requests family medical history of the individual. 42 U.S.C. § 2000ff–2(b); *see also Punt v. Kelly Services*, 863 F.3d 1040 (10th Cir. 2017) (holding evidence showed plaintiff told various individuals of her family history of breast cancer).

Defendant argues Plaintiff has no evidence to support his GINA claim because Defendant never required Plaintiff to provide any of his family genetic information, and Plaintiff voluntarily disclosed that cancer ran in his family. (Doc. No. 25 at 20-21). While Plaintiff argues Lee repeatedly questioned Plaintiff about his cancer, doctor's opinions, test results, and treatment options, Plaintiff's deposition states he voluntarily told three people, including Lee, that cancer ran in his family. (Doc. No. 30 at 26; Doc. No. 24-1, William Depo. at 223). Furthermore, Defendant never required or requested Plaintiff or his family to submit to a genetic test. (Doc. No. 24-1, William Depo. at 223-24).

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's GINA discrimination claim, because Plaintiff voluntarily shared genetic information about his family, which is an exception under 42 U.S.C. § 2000ff–2(b).

## F.    PLAINTIFF'S ERISA CLAIMS

Under ERISA, it is "unlawful for any person to discharge . . . or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . ." 29 U.S.C. § 1140. Thus, the Sixth Circuit recognizes two types of claims under Section 1140: "(1) a 'retaliation' claim where adverse action is taken because a participant availed [him]self of an ERISA right; and (2) an 'interference' claim where adverse action is taken as interference with the attainment of a right under ERISA." *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627-28 (6th Cir. 2008) (quoting *Dunn v. Elco Enterprises, Inc.*, 2006 WL 1195867 at *3 (E.D. Mich. May 4, 2006)). To avoid summary judgment on a Section 1140 claim, a plaintiff must demonstrate that the defendant had the specific intent to violate ERISA through either direct or circumstantial evidence. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). If the Court finds no direct evidence of ERISA discrimination, a plaintiff must state a *prima facie case* for ERISA retaliation or interference using the burden-shifting analysis discussed above. *See Schweitzer v. Teamster Local 100*, 413 F.3d 533, 537 (6th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### 1.   Direct Evidence of ERISA Retaliation and Interference

"Direct evidence" is defined as "evidence that proves the existence of a fact without requiring any inferences." *Sanders v. Lincoln Cnty.*, 231 F. Supp. 3d 290, 295 (M.D. Tenn. Feb. 8, 2017) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)).

"[O]nly the most blatant remarks, whose intent could be nothing other than to discriminat[e]. . . satisfy this criteria." *Rowan* 360 F.3d at 536. "For example, an actual statement by an employer proclaiming his or her ... animus constitutes direct evidence . . . of discrimination." *Blaney v. Cengage Learning, Inc.,* 2011 WL 1532032, at *4 (S.D. Ohio Apr. 22, 2011) (citing *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir.1998)). An "isolated, ambiguous, or abstract comment," however, "will not suffice." *Id.* (citing *Coburn v. Rockwell Automation, Inc.,* 238 Fed. Appx. 112, 117–18 (6th Cir. 2007)).

Here, Plaintiff alleges the existence of direct evidence that his medical coverage and costs motivated Defendant's decision to terminate him in violation of ERISA. (Doc. No. 30 at 25). Plaintiff argues Flatt and Lee both concocted a plan to obtain Plaintiff's resignation, but gave up on that course of action after realizing Plaintiff "might be holding on for medical coverage" because his cancer treatments were expensive. (Doc. No. 35 at ¶ 25). Plaintiff further argues Mr. Mike Pattison[9] testified Defendant's medical plan paid for 75% of Plaintiff's premiums. (Doc. No. 30 at 25). Plaintiff asserts this is direct evidence of ERISA discrimination.

Defendant argues Plaintiff does not show direct evidence that the cost of his medical care played a role in Defendant's decision to terminate Plaintiff. Instead, Defendant argues that Flatt proposed offering Plaintiff the opportunity to resign rather than moving forward in the policy violation investigation, once Plaintiff claimed he had not spoken with anyone about the child molestation rumor. (Doc. No. 35 at 6-7). Flatt obtained evidence confirming Plaintiff did communicate with another employee about the rumor, and believed Plaintiff resigning would avoid the indignity of Plaintiff's termination. (*Id.*). Flatt mentioned Plaintiff might refuse to resign

---

[9] Mr. Patterson is the Vice President of Human Resources for the Defendant and was on the corporate review call that eventually led to Plaintiff's termination.

because Plaintiff needed to maintain medical coverage. (*Id.*). Defendant argues Flatt's comment does not convey retaliatory intent to violate ERISA, must merely speculates that Plaintiff may not resign for fear of losing medical coverage. (*Id.* at 7).

The Court finds Plaintiff does not provide direct evidence of ERISA discrimination because Lee's comment is not "blatant" evidence, but instead is ambiguous and does not reference ERISA. *See, e.g., Scott v. Potter,* 182 Fed. Appx. 521, 526 (6th Cir. 2006) (finding the statement "[w]hy don't you retire and make everybody happy" did not constitute direct evidence of age discrimination"). Because Plaintiff provides no direct evidence of ERISA discrimination, the Court applies the burden-shifting analysis to Plaintiff's retaliation and interference claims.

### 2. Interference

To defeat summary judgment on an ERISA interference claim, a plaintiff must show, "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992). The Sixth Circuit has noted to demonstrate a violation of ERISA, a plaintiff "must show that an employer had a specific intent to violate ERISA." *Rush v. United Technologies, Otis Elevator Div.,* 930 F.2d 453, 457 (6th Cir.1991). The plaintiff need not show the employer's sole purpose for the discharge was interference with the plaintiff's benefits, but rather that it was "a motivating factor" in the decision. *Humphreys,* 966 F.2d at 1043.

Defendant asserts Plaintiff cannot point to specific evidence to show Defendant's desire to reduce medical costs motivated the decision to terminate Plaintiff. (Doc. No. 25 at 24). Defendant argues Plaintiff testified he does not how much his medical treatments cost Defendant or how terminating Plaintiff would decrease costs associated with Defendant's employee healthcare plan. (*Id.* at 23-24).

21

Plaintiff argues at the time of his termination he had just completed a round of radiation for his cancer. (Doc. No. 30 at 25-26). Furthermore, Lee knew of Plaintiff's need for health insurance because he asked Plaintiff when his procedures were scheduled. (*Id.*). Once Plaintiff returned from treatment Defendant suspended him and then terminated him, as opposed to allowing him to continue to receive treatment under the medical plan. ((*Id.* at 26)

The Court finds Plaintiff has not established a *prima facie* case for ERISA interference because Plaintiff has introduced no evidence to show Defendant's desire to avoid paying for Plaintiff's medical treatment was a determining factor in Plaintiff's discharge. *See Washington v. Comcast Corp.*, 268 Fed. Appx. 423, 429 (6th Cir. 2008). At the time of Plaintiff's termination, neither Lee nor Flatt knew any information regarding Defendant's medical plan payments towards Plaintiff's premiums. Furthermore, Plaintiff provides no evidence that there were discussions or communications regarding Plaintiff's medical benefits, other than Flatt suggesting Plaintiff should resign to avoid the embarrassment of termination. (Doc. No. 36 at ¶ 25). Finally, Flatt's report, recommendation, and the group call that led to Plaintiff's termination make no reference to Plaintiff's coverage or benefits, showing Defendant did not have the intent to terminate Plaintiff based on his ERISA benefits. (Doc. No. 31 at ¶¶ 74-76). Accordingly, Defendant's motion for summary judgment for ERISA interference is **GRANTED**.

### 3. Retaliation

To establish a *prima facie* case of ERISA retaliation an employee must show that "(1) []he was engaged in activity that ERISA protects; (2) []he suffered an adverse employment action; and (3) a causal link exists between [his] protected activity and the employer's adverse action." *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 627-28 (6th Cir. 2008) (quoting *Dunn v. Elco Enterprises, Inc.*, 2006 WL 1195867 at *3 (E.D. Mich. May 4, 2006)). Here,

the parties do not dispute Plaintiff engaged in ERISA protected activity and suffered an adverse employment action. Instead, Defendant argues there is no causal link between Plaintiff exercising ERISA rights and his termination. (Doc. No. 35 at 6). Similarly to ERISA interference, in proving causation a plaintiff must show the employer had the specific intent to violate ERISA when employer took adverse action against plaintiff. *Trentham v. Hidden Mountain Resorts, Inc.*, 2010 WL 199959 at *9 (E.D. Tenn. Jan. 13, 2010) (citing *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)).

Plaintiff and Defendant assert the same arguments for ERISA retaliation as they do for interference. Accordingly, the Court applies the same analysis and finds Plaintiff has not stated sufficient facts to show Defendant had the specific intent to violate ERISA. Accordingly, Defendant's motion for summary judgment for ERISA retaliation is **GRANTED**.

### G. PLAINTIFF'S BACK PAY AND FRONT PAY

Defendant requests that Plaintiff's claims for back pay and front pay be dismissed in light of Plaintiff's representations to the Social Security Administration that he is too disabled to work. (Doc. No. 25 at 25-26). Because the Court has dismissed all Plaintiff's claims, Defendant's request is **MOOT**.

### IV. CONCLUSION

Because there is no genuine issue of material fact as to Plaintiff's claims under the ADA, TDA, GINA, ADEA, THRA, FMLA, or ERISA, summary judgment in Defendant's favor is appropriate. Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE